IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| RVLOCK & CO, LLC, a Utah limited liability company,<br><br>                Plaintiff,<br><br><br>v.<br><br><br>MNDZ, LLC, a Utah limited liability company; and NICHOLAS MENENDEZ, an individual,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br><br>Case No. 1:25-cv-00182<br><br>Judge Tena Campbell<br>Magistrate Judge Daphne A. Oberg |

Before the court is a Motion to Dismiss filed by Defendants MNDZ, LLC (MNDZ) and Nicholas Menendez. (ECF No. 29.) For the reasons stated below, the court denies the motion.

**BACKGROUND**

Plaintiff RVLock & Co., LLC (RVLock) sells keyless locking door handles for recreational vehicles as well as other products "for those with RVs or that are engaged in camping or other recreational outdoor activities." (Corr. First Am. Compl., ECF No. 36 at ¶¶ 2, 11–13.) RVLock designs solutions specifically for recreational vehicles, travel trailers, horse trailers, and more. (Id. ¶ 11.) Mr. Menendez is the owner and principal of MNDZ, a company he formed on January 16, 2022. (Id. ¶¶ 4, 28.)

RVLock entered into an independent contractor agreement (the Agreement) with Mr. Menendez on August 27, 2021. (Id. ¶ 14.) The Agreement required Mr. Menendez to provide RVLock with consulting services and "any other tasks which the Parties may agree on." (Id. ¶ 15.) And the Agreement prevented Mr. Menendez from disclosing, divulging, revealing,

1

reporting, or using for any purpose any confidential information obtained from RVLock, except as authorized by RVLock.  (Id. ¶ 18.)

At the end of 2023 and start of 2024, RVLock worked with Mr. Menendez to prepare RVLock-branded inflatable couches for trade shows, including the Quartzite [sic] RV Show.  (Id. ¶¶ 29–31, 33.)  In preparation for one of these shows, Mr. Menendez proposed the name "Slouch Couch."  (Id. ¶ 32.)  The inflatable couches received positive feedback at the trade shows, so RVLock decided to develop an inflatable couch product.  (Id. ¶¶ 37–38.)  Mr. Menendez was involved in various aspects of designing and marketing this product.  (Id. ¶¶ 39–42, 44–45, 47–51.)

Mr. Menendez purchased the website "getslouchy.com" in April 2024.  (Id. ¶ 43.)  In August 2024, Mr. Menendez took a sample inflatable couch to his car.  (Id. ¶ 53.)  Then, in the fall of 2024, Mr. Menendez informed RVLock that he wanted to independently pursue a couch product.  (Id. ¶ 57.)  And in December 2024, Mr. Menendez abruptly terminated his contract with RVLock.  (Id. ¶ 63.)  After terminating the contract, Mr. Menendez returned the computer he had been issued by RVLock.  (Id. ¶ 66.)  The hard drive of the computer had been completely wiped.  (Id. ¶ 67.)  The Plaintiff alleges that Mr. Menendez extracted RVLock's contact lists and product information from his computer before returning it.  (Id. ¶¶ 68–69.)

Months later, MNDZ began selling inflatable couches under the name "Slouch Couch."  (Id. ¶¶ 70–71.)  MNDZ sells its inflatable couch on the website "getslouchy.com" and through online retailers, including Amazon.com.  (Id. ¶¶ 72–73.)  MNDZ has marketed the inflatable couch for beach and camping use and named a product the "Happy Camper."  (Id. ¶ 75.)  The Plaintiff alleges that Mr. Menendez has used RVLock's influencers to promote the product and

2

RVLock's supplier contacts to develop the products without RVLock's permission.  (Id. ¶¶ 76–81.)

RVLock filed this action on November 14, 2025.  (See Compl., ECF No. 1.)  RVLock brings three claims: 1) trade secret misappropriation under the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1836, et seq. (Corr. First Am. Compl. ¶¶ 82–113); 2) trade secret misappropriation under Utah Code Ann. § 13-24-1 (id. ¶¶ 114–44); and 3) breach of contract (id. ¶¶ 145–69.)

The Plaintiff asserts that it owns numerous trade secrets, including "lists of supplier contacts, contact lists, social media lists, social media influencer contacts, information on pricing for an inflatable couch product, and information gathered from testing the designs, styles, colors, and samples for an inflatable couch product."  (Id. ¶ 85.)  The Plaintiff alleges upon information and belief that Mr. Menendez extracted this information from the computer issued to him by RVLock before wiping and returning the computer.  (Id. ¶ 98.)  According to the Plaintiff, Mr. Menendez then used this information to develop, market, and sell MNDZ's inflatable couch.  (Id. ¶ 100.)

The Defendants filed their Motion to Dismiss on February 14, 2026, arguing that the Plaintiff's first cause of action fails to allege misappropriation under the DTSA and that the court should decline to exercise jurisdiction over the remaining state law claims.  (See Mot. to Dismiss, ECF No. 29.)

## LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must allege sufficient facts 'to state a claim to relief that is plausible on its face.'"  Strauss v. Angie's List, Inc., 951 F.3d 1263, 1266 (10th Cir. 2020) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544,

570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A Rule 12(b)(6) motion to dismiss "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations."  Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006), cert. denied, 549 U.S. 1209 (2007) (quoting Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976)).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's ... complaint alone is legally sufficient to state a claim for which relief may be granted.  We accept all well-pled factual allegations as true and view these allegations in the light most favorable to the nonmoving party."  Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010) (citation modified).

## ANALYSIS

### I.        The Plaintiff Sufficiently Pleads a Violation of the Defend Trade Secrets Act

"The DTSA permits '[a]n owner of a trade secret that is misappropriated' to file suit 'if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'"  Double Eagle Alloys, Inc. v. Hooper, 134 F.4th 1078, 1087 (10th Cir. 2025) (quoting 18 U.S.C. § 1836(b)(1)).  "To establish a claim under the DTSA, the plaintiff must demonstrate (1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce."  Id. (citation modified).

The Defendants argue that the Plaintiff fails to allege 1) that the trade secrets implicate interstate or foreign commerce and 2) that they were misappropriated.  The court addresses both issues below.

4

**A.  The Plaintiff Adequately Alleges that the Trade Secrets Implicate Interstate or Foreign Commerce**

The Defendants claim that the Plaintiff fails to allege that the claimed trade secrets relate to a "product or service used in, or intended for use in, interstate or foreign commerce."  (See ECF No. 29 at 5.)  The Plaintiff responds that the website "getslouchy.com" explicitly implicates interstate and foreign commerce.  And, even if the court does not consider the website, the Plaintiff argues that the Amended Complaint otherwise contains sufficient facts to implicate interstate commerce.

"[L]ittle is needed to satisfy this 'interstate commerce' requirement at the pleading stage." Aira Jewels, LLC v. Mondrian Collection, LLC, No. 1:23-CV-04510 (JLR), 2024 WL 1255798, at *3 (S.D.N.Y. Mar. 25, 2024) (citation omitted).  Yet, even when "it seems likely that Plaintiffs' business model implicates interstate commerce …, the ways in which it does should not be left to the Court's imagination."  Catalyst Campus for Tech. & Innovation, Inc. v. Brown, No. 1:24-cv-00059-AMA-DAO, 2025 WL 2781561, at *8 n.94 (D. Utah Sept. 30, 2025).

There is little guidance from the Tenth Circuit on how to evaluate whether the alleged facts are sufficient to implicate interstate or foreign commerce.  But decisions from other courts are instructive on the issue of whether a plaintiff has cleared this "low bar."  Aira Jewels, LLC, 2024 WL 1255798, at *3.  For example, in Kraus USA, Inc. v. Magarik, the court determined that the plaintiff satisfied this DTSA requirement by alleging that it is a "nationally renowned" company and its trade secrets are used in interstate commerce.  No. 17-CV-6541 (ER), 2020 WL 2415670, at *7 (S.D.N.Y. May 12, 2020).  In Yager v. Vignieri, the court held that the plaintiff's trade secrets implicated interstate commerce because "[a]t least some of [the plaintiff's] patients travel from New Jersey into New York to use his services."  No. 16-CV-9367 (DLC), 2017 WL 4574487, at *2 (S.D.N.Y. Oct. 12, 2017) (citation omitted).  And in Stress Engineering Services,

Inc. v. Olson, the court found the allegation that "the trade secrets are used in connection with refineries and petrochemical facilities 'of clients located throughout the United States'" was sufficient to suggest "that the trade secrets are related to a product or service used or intended for use in interstate commerce" and emphasized that "[n]othing more is required." No. CV H-21-3210, 2022 WL 4086574, at *5 (S.D. Tex. Aug. 4, 2022), report and recommendation adopted, No. CV H-21-3210, 2022 WL 4084433 (S.D. Tex. Sept. 6, 2022).

The Plaintiff argues that the website "getslouchy.com," which states that the Defendants ship their product internationally, demonstrates that the alleged trade secrets relate to a product intended for use in interstate or foreign commerce. (See Pl.'s Mem. Opp'n, ECF No. 31 at 12.) More specifically, the Plaintiff points to the Frequently Asked Questions page on the website, which indicates that the inflatable couch can be sent "anywhere in the world." The court may take judicial notice of the representations made on a public website. See United States v. Boyd, 289 F.3d 1254, 1258 (10th Cir. 2002) (finding that Federal Rule of Evidence 201(b) "permits a court to take judicial notice of a particular fact where that fact is not subject to reasonable dispute in that the fact is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" (citation modified)). That said, the Plaintiff did not include these allegations in the Amended Complaint, and the court recognizes that the contents of a website may change over time.

But the court need not rely on the website's representations at this stage because the Plaintiff has otherwise included sufficient allegations for the court to infer that the claimed trade secrets implicate interstate commerce. For instance, RVLock alleges that the Defendants sell their product on Amazon.com, a nationwide distributor, and there is no indication that the sales

are restricted to Utah residents.  (Corr. Redacted First Am. Compl. ¶ 73.)  The Plaintiff also argues that some of the claimed trade secrets, including the contact lists and social media lists, are used for product promotion on social media platforms, which generally target consumers across state lines.  (See ECF No. 31 at 13; Corr. Redacted First Am. Compl. ¶¶ 77–78, 85.)

In addition, the products are geared towards activities that plausibly involve interstate travel.  Specifically, the complaint alleges that Mr. Menendez marketed the inflatable couch for beach and camping use and named a product the "Happy Camper."  (Id. ¶ 75.)  RVLock also sells products "for those with RVs or that are engaged in camping or other recreational outdoor activities."  (Id. ¶ 13.)  And RVLock designs solutions specifically for recreational vehicles, travel trailers, horse trailers, and more.  (Id. ¶ 11.)

Finally, the Plaintiff alleges that it prepared inflatable couches as a marketing tool for trade shows, including the Quartzite [sic] RV Show.  (See id. ¶¶ 29–36, 55.)  In the briefing, the Plaintiff noted that this event occurred in Quartzsite, Arizona.  (See ECF No. 31 at 13.)  While the Plaintiff does not include that allegation in the Amended Complaint, the court may take judicial notice that the Quartzite [sic] RV Show did indeed occur in Quartzsite, Arizona.  And marketing the inflatable couches at a trade show in Arizona is sufficient evidence to show that the inflatable couches were used or intended for use in interstate commerce.  Cf. Wells Lamont Indus. Grp. LLC v. Richard Mendoza & Radians, Inc., No. 17 C 1136, 2017 WL 3235682, at *3

(N.D. Ill. July 31, 2017) (finding that arranging a meeting with an office in a different state is evidence that goods were intended for use in interstate commerce).

For these reasons, the court finds that the Plaintiff has satisfied its burden of alleging that the claimed trade secrets relate to a product or service used in, or intended for use in, interstate or foreign commerce.

### B. The Plaintiff Adequately Alleges Misappropriation

The Defendants argue that the Plaintiff has failed to allege misappropriation, maintaining that many of the allegations in the complaint are stated "upon information and belief" and that the allegations not made upon information and belief provide inadequate factual support.

"In the Tenth Circuit, the mere fact that a plaintiff uses the language 'information and belief' does not make an allegation conclusory." Healthcare Co. v. MPI Grp. LLC, No. 1:25-cv-00031-DBB-CMR, 2025 WL 2810630, at *8 (D. Utah Oct. 2, 2025) (citation modified). "[I]nstead, the Court must consider the content of the allegation itself." AAAG-California, LLC v. Kisana, No. 22-cv-00026-HCN-JCB, 2020 WL 2849929, at *2 (D. Utah June 2, 2020) (citation omitted). "Facts alleged upon information and belief may meet Rule 12(b)(6)'s plausibility standard so long as they are not merely conclusory and are peculiarly within the possession and control of the defendant or based on factual information that makes an inference of culpability plausible." Cordero v. Olson Assocs. P.C., 740 F. Supp. 3d 1117, 1124 (D. Utah 2024) (citation modified).

In AAAG-California, LLC, the defendant argued that the allegations in the complaint were conclusory and not well pleaded because they were based on information and belief. 2020 WL 2849929, at *2. The court disagreed and found that the plaintiff "alleged facts based upon information and belief only where there is circumstantial evidence supporting the allegations and

8

where the allegations are based upon the information it has discovered thus far, all of which state a plausible claim of liability under the stated causes of action." Id.  The court also noted that "the original and proposed defendants control much of the information underlying Plaintiff's allegations in the third amended complaint." Id.

For similar reasons, the court finds that RVLock has adequately alleged misappropriation here.  When the Plaintiff offers allegations "upon information and belief," these allegations are not merely conclusory but instead make specific claims supported by circumstantial evidence. The Plaintiff alleges upon information and belief that Mr. Menedez extracted confidential information from his company computer about the design and marketing of the RVLock inflatable couch and used that confidential information to produce and sell his own inflatable couch.  (Corr. First Am. Compl. ¶¶ 76–80, 97–98.)  Circumstantial evidence supports these allegations.  The Plaintiff alleges that Mr. Menendez had access to its confidential and proprietary information and was heavily involved in the development of RVLock's inflatable couch.  (Id. ¶¶ 26–27, 39.)  While working for RVLock, Mr. Menendez registered the website "getslouchy.com."  (Id. ¶ 167.)  After terminating his contract with no notice, Mr. Menendez returned his company computer with its contents wiped.  (Id. ¶¶ 97–98.)  And in short order, Mr. Menendez began to sell his own inflatable couch.  (Id. ¶¶ 70–74.)  The court finds that this circumstantial evidence provides sufficient support for RVLock's allegations made upon information and belief.  Moreover, Mr. Menendez has complete control over some of the underlying facts.

## II.      The Court May Exercise Jurisdiction

After dismissing all claims over which it has original jurisdiction, a district court may decline to exercise supplemental jurisdiction over remaining claims.  28 U.S.C. § 1367(c)(3).

Indeed, the Tenth Circuit has urged that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." <u>Smith v. City of Enid By & Through Enid City Comm'n</u>, 149 F.3d 1151, 1156 (10th Cir. 1998) (citations omitted).  Because the court finds that the Plaintiff has adequately pleaded a DTSA claim, the court does not consider whether it should decline to exercise supplemental jurisdiction.

**ORDER**

For the foregoing reasons, the court DENIES the Defendants' Motion to Dismiss (ECF No. 29).

DATED this 31st day of July, 2026.

BY THE COURT:

Tena Campbell
United States District Judge