UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| RVLOCK & CO, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>MNDZ, LLC, a Utah limited liability company; and NICHOLAS MENENDEZ, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER LIMITING RECIPIENTS OF ATTORNEYS' EYES ONLY MATERIAL TO OUTSIDE COUNSEL (DOC. NO. 53)**<br><br>Case No. 1:25-cv-00182<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Daphne A. Oberg |

In this suit between business competitors, each side accuses the other of misappropriating trade secrets. MNDZ, LLC and Nicholas Menendez now move for a protective order limiting recipients of attorneys' eyes only (AEO) material to outside counsel for RVLock & Co, LLC.[1] Specifically, they seek to prevent RVLock's general counsel, Adam Curtis, from accessing material they have designated as AEO. In opposition, RVLock contends Mr. Curtis should have access to AEO material because his primary role is litigation and he is not involved in competitive decision-making.[2]

[1] (Defs.' Short Form Disc. Mot. Re Protective Order Limiting Recipients of Att'ys' Eyes Only Material to Outside Counsel (Mot.), Doc. No. 53.)

[2] (Pl.'s Opp'n to Defs.' Short Form Disc. Mot. Re Protective Order Limiting Recipients of Att'ys' Eyes Only Material to Outside Counsel (Opp'n), Doc. No. 54.)

Because Defendants have not shown a probability that disclosing AEO material to Mr. Curtis would cause competitive harm, their motion for a protective order is denied.[3]

ANALYSIS

A court may issue a protective order for "good cause," to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense."[4] Under the governing protective order in this case, AEO material may be disclosed to "counsel for a party, who are acting in a legal capacity and are actively engaged in this matter."[5] There is no dispute Mr. Curtis is a qualified recipient under the protective order, but Defendants seek to prevent him from accessing AEO material because he is RVLock's general counsel.

As the party seeking to restrict access, Defendants have "the burden to show a probability that . . . disclosure to in-house counsel would cause competitive harm."[6] To make this showing, Defendants must "make a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[7] Mr. Curtis's status

---

[3] This order is issued consistent with the oral ruling at the November 16, 2026 hearing. (*See* Minute Entry, Doc. No. 64.)

[4] Fed. R. Civ. P. 26(c)(1).

[5] Standard Protective Order ¶¶ (B)(1)(a), (B)(2), available at https://www.utd.uscourts.gov/sites/utd/files/Standard%20Protective%20Order%20.pdf [https://perma.cc/4ZHX-ELYT]; (*see also* Scheduling Order ¶ 2(b), Doc. No. 44 (adopting the District of Utah's Standard Protective Order in this case)).

[6] *Sprint Communs. Co. L.P. v. Big River Tel. Co., LLC*, No. 08-2046, 2008 U.S. Dist. LEXIS 70669, at *5 (D. Kan. Sept. 16, 2008) (unpublished).

[7] *Id.* (internal quotation marks omitted); *see also Pia v. Supernova Media, Inc.*, 275 F.R.D. 559, 560 (D. Utah 2011) (noting a party seeking a protective order under Rule 26(c) "has the burden to show good cause for preventing dissemination of discovery materials," which requires "concrete reasons" rather than "unverified fears").

as in-house counsel is insufficient, on its own, to prevent access.[8] Instead, courts must consider the "particular counsel's activities and relationship with the party."[9] In evaluating the risk of inadvertent disclosure, courts focus on whether the attorney is involved in competitive decision-making.[10]

Defendants have not carried their burden to show a probability that disclosing AEO material to Mr. Curtis would cause competitive harm. Defendants' assertions of harm are largely speculative and lack evidentiary support. First, they contend Mr. Curtis "presumably has broader responsibilities/duties than just litigation," which increases the likelihood of inadvertent disclosure.[11] But RVLock presented evidence that Mr. Curtis is not involved in competitive decision-making—and this is the central consideration in determining access to AEO material. Specifically, Mr. Curtis stated his principal role is to participate in RVLock's litigation matters.[12] He unequivocally affirmed he does not engage in competitive decision-making activities at RVLock, and he has no role in

---

[8] *See U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed. Cir. 1984); *Sprint*, 2008 U.S. Dist. LEXIS 70669, at *6.

[9] *Sprint*, 2008 U.S. Dist. LEXIS 70669, at *6; *see also U.S. Steel*, 730 F.2d at 1468 ("[T]he factual circumstances surrounding each individual counsel's activities, association, and relationship with a party, whether counsel be in-house or retained, must govern any concern for inadvertent or accidental disclosure.").

[10] *See Sprint*, 2008 U.S. Dist. LEXIS 70669, at *6–7 (noting this "includes advising or participating in pricing, product design, marketing or other decisions 'made in light of similar or corresponding information about a competitor'" (quoting *U.S. Steel*, 730 F.2d at 1468 n.3)); *Blendtec Inc. v. Blendjet Inc.*, No. 2:21-cv-668, 2024 U.S. Dist. LEXIS 63332, at *5–6 (D. Utah Apr. 5, 2024) (unpublished).

[11] (Mot. 2, Doc. No. 53.)

[12] (Decl. of Adam Curtis in Supp. of Pl.'s Opp'n (Curtis Decl.) ¶ 4, Doc. No. 55.)

pricing, production, design, marketing, sales efforts, or corporate strategic decision-making.[13]

Defendants also express other concerns about inadvertent disclosure. They suggest Mr. Curtis lacks experience handling AEO material because he was only recently admitted to practice law in Utah.[14] But Mr. Curtis's declaration establishes he has been practicing since 2024 and has previously handled AEO material without inadvertent disclosure.[15] Next, Defendants raise the possibility of inadvertent disclosure if Mr. Curtis uses company email to access AEO material or saves it on company platforms.[16] But Mr. Curtis adequately addressed this by committing to using a third-party platform to access AEO material.[17] This is sufficient to alleviate any concern about inadvertent disclosure through use of RVLock's email system or platforms.

Defendants claim RVLock's insistence on allowing Mr. Curtis to access AEO material is troubling, given their allegations that RVLock impersonated Mr. Menendez to

---

[13] (*Id.* ¶ 5.) In the *Sprint* case, a court allowed in-house counsel with a similar role to access AEO material. *See Sprint*, 2008 U.S. Dist. LEXIS 70669, at *8–9 (noting the in-house attorney's "main responsibility [was] to manage plaintiff's litigation matters," and he provided a declaration stating he played "no role in the plaintiff's decisions relating to pricing, product design, marketing, sales efforts, or general corporate strategic decision-making").

[14] (Mot. 2–3, Doc. No. 53.)

[15] (Curtis Decl. ¶ 6, Doc. No. 55). This is similar, again, to the *Sprint* attorney. *See Sprint*, 2008 U.S. Dist. LEXIS 70669, at *9 (noting the attorney had been granted access to highly confidential information in other cases without allegations that he misused or revealed the information).

[16] (Mot. 3, Doc. No. 53.)

[17] (Curtis Decl. ¶ 7, Doc. No. 55.)

misappropriate MNDZ's trade secrets.[18] But both sides have accused the other of misappropriation, and the existence of misappropriation claims is not determinative. It does not change the applicable legal standards—standards set out in cases involving similar claims of infringement between competitors.[19] As an attorney authorized to practice law in Utah, Mr. Curtis must abide by the protective order and his professional obligations, notwithstanding the claims against his client. "[I]n-house counsel, like retained counsel, are officers of the court, are bound by the same code of professional responsibility, and are subject to the same sanctions."[20]

Finally, Defendants argue RVLock hasn't articulated a need for Mr. Curtis to access AEO materials, where it is represented by capable outside counsel.[21] But the burden is on Defendants to show a basis to restrict access—not on RVLock to show access is necessary. Regardless, RVLock has adequately explained Mr. Curtis's need for access: he is an "active member of its litigation team" who is involved in "strategic litigation decision-making" and "day-to-day prosecution of this case."[22] This is sufficient, particularly given Defendants' failure to provide evidence that disclosure to Mr. Curtis would cause competitive harm.

---

[18] (Mot. 3, Doc. No. 53.)

[19] *See, e.g.*, *Blendtec*, 2024 U.S. Dist. LEXIS 63332, at *2 (case involving claims of trademark infringement and unfair competition between business competitors); *Sprint*, 2008 U.S. Dist. LEXIS 70669, at *2 (patent infringement case).

[20] *Sprint*, 2008 U.S. Dist. LEXIS 70669, at *13.

[21] (Mot. 1, Doc. No. 53.)

[22] (Opp'n 2, Doc. No. 54.)

CONCLUSION

Defendants' motion[23] to limit recipients of AEO material to outside counsel is denied. Mr. Curtis may access AEO material in this case.

DATED this 18th day of November, 2026.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

[23] (Doc. No. 53.)